STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
EVAN J. DAVIS (Cal. Bar No. 250484)
DAVID L. KIRMAN (Cal. Bar No. 235175)
Assistant United States Attorneys
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-4850/4442
        Facsimile: (213) 894-6269
        E-mail: evan.davis@usdoj.gov
                david.kirman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-739-SVW |
|---|---|
| Plaintiff, | TRIAL MEMO |
| v. | Trial Date:  October 7, 2014 |
| CINDY OMIDI, | Trial Time:  9:00 a.m. |
| Defendant. | Location: Courtroom of the Hon. Stephen V. Wilson |

        Plaintiff, United States of America, by and through its counsel

of record, Assistant United States Attorneys Evan J. Davis and David

L. Kirman, hereby submits its trial memorandum.   Leave is

///

///

///

respectfully requested to file additional memoranda as may become

appropriate during the course of the trial.


Dated: October 3, 2014              Respectfully submitted,

                                    STEPHANIE YONEKURA
                                    Acting United States Attorney

                                    ROBERT E. DUGDALE
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    EVAN J. DAVIS
                                    DAVID L. KIRMAN
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

                                                                      **PAGE**

TABLE OF AUTHORITIES................................................ii

I.   CASE STATUS....................................................1

II.  PRETRIAL MOTIONS...............................................4

III. INDICTMENT AND ELEMENTS........................................6

IV.  STATEMENT OF FACTS.............................................8

V.   ANTICIPATED DEFENSE CASE......................................10

VI.  EVIDENTIARY ISSUES...........................................10

     A.   Stipulations...........................................10

     B.   Charts and Summaries...................................10

          i.   Summary Charts....................................11

          ii.  Summary Witness...................................13

     C.   Expert Testimony.......................................14

     D.   Authentication and Foundation..........................15

     E.   Business Records.......................................16

          i.   Foundational Requirements.........................16

          ii.  "Qualified Witness"...............................17

          iii. Circumstances of Preparation......................18

          iv.  Authentication by Declaration.....................18

     F.   Public Records.........................................19

     G.   Cross-Examination of Defendant.........................19

     H.   Cross-Examination of General Witnesses.................20

     I.   Character Evidence.....................................21

VII. RECIPROCAL DISCOVERY.........................................22

VIII.CROSS-EXAMINATION OF LAY OPINION WITNESSES (POSTAL CLERKS) ...23

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES:**                                                                    **PAGE(S)**

<u>Barsky v. United States</u>,
  339 F.2d 180 (9th Cir. 1964)...................................12

<u>Crawford v. Washington</u>,
  541 U.S. 36 (2004)..........................................19

<u>Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.</u>,
  466 F.2d 722 (7th Cir. 1972).................................14

<u>La Porta v. United States</u>,
  300 F.2d 878 (9th Cir. 1962).................................17

<u>Michelson v. United States</u>,
  335 U.S. 469 (1948).......................................21, 22

<u>Tamarin v. Adam Caterers, Inc.</u>,
  13 F.3d 51 (2d Cir. 1993)....................................12

<u>United States v. Aceves-Rosales</u>,
  832 F.2d 1155 (9th Cir. 1987)................................23

<u>United States v. Arias-Villanueva</u>,
  998 F.2d 1491 (9th Cir. 1993)................................17

<u>United States v. Basey</u>,
  613 F.2d 198 (9th Cir. 1979).................................18

<u>United States v. Beltran-Rios</u>,
  878 F.2d 1208 (9th Cir. 1989)................................15

<u>United States v. Binder</u>,
  769 F.2d 595 (9th Cir. 1985).................................14

<u>United States v. Black</u>,
  767 F.2d 1334 (9th Cir. 1985)............................16, 19

<u>United States v. Bland</u>,
  961 F.2d 123 (9th Cir. 1992).................................16

<u>United States v. Bush</u>,
  522 F.2d 641 (7th Cir. 1975) ................................26

<u>United States v. Bourjaily</u>,
  483 U.S. 171 (1987).........................................16

<u>United States v. Caswell</u>,
  825 F.2d 1228 (8th Cir. 1989)................................12

<u>United States v. Catabran</u>,
  836 F.2d 453 (9th Cir. 1988).................................18

ii

### TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL CASES:**                                                      **PAGE(S)**

United States v. Cervantes-Flores,
    421 F.3d 825 (9th Cir. 2005)...................................19

United States v. Childs,
    5 F.3d 1328 (9th Cir. 1993)...................................17

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991)..................................16

United States v. Cuevas,
    847 F.2d 1417 (9th Cir. 1988)............................14, 15

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992)..................................19

United States v. Cuti,
    720 F.3d 453 (2d Cir. 2013) .............................24, 25

United States v. De Peri,
    778 F.2d 963 (3d Cir. 1985)..................................13

United States v. Espinosa,
    827 F.2d 604 (9th Cir. 1987).................................15

United States v. Franco,
    874 F.2d 1136 (7th Cir. 1989)................................17

United States v. Gardner,
    611 F.2d 770 (9th Cir. 1980).............................12, 13

United States v. Gay,
    967 F.2d 322 (9th Cir. 1992)................................ 20

United States v. Golden,
    532 F.2d 1244 (9th Cir. 1976)................................15

United States v. Hagege,
    437 F.3d 943 (9th Cir. 2006).................................19

United States v. Hathaway,
    798 F.2d 902 (6th Cir. 1986).................................17

United States v. Huber,
    772 F.2d 585 (9th Cir. 1985).................................18

United States v. Jennings,
    487 F.3d 564, 582 (8th Cir. 2007) ...........................26

iii

**TABLE OF AUTHORITIES (CONTINUED)**

FEDERAL CASES:                                                    PAGE(S)

United States v. Johnson,
        594 F.2d 1253 (9th Cir. 1979)................................11

United States v. Johnson,
        735 F.2d 1200 (9th Cir. 1984)................................15

United States v. Laurienti,
        611 F.3d 530 (9th Cir. 2010) ............................25, 26

United States v. Lemire,
        720 F.2d 1327 (D.C. Cir. 1983)...............................14

United States v. Marchini,
        797 F.2d 759 (9th Cir. 1986).................................15

United States v. McCollom,
        664 F.2d 56 (5th Cir. 1981)..................................22

United States v. Meyers,
        847 F.2d 1408 (9th Cir. 1988)................................11

United States v. Miller,
        771 F.2d 1219 (9th Cir. 1985)................................18

United States v. Mitchell,
        613 F.3d 862 (8th Cir. 2010).................................20

United States v. Nash,
        115 F.3d 1431 (9th Cir. 1997)................................23

United States v. Orr,
        692 F.3d 1079 (10th Cir. 2012) ..............................26

United States v. Patterson,
        819 F.2d 1495 (9th Cir. 1987)................................14

United States v. Poschwatta,
        829 F.2d 1477 (9th Cir. 1987)................................12

United States v. Pree,
        408 F.3d 855 (7th Cir. 2005).................................14

United States v. Radseck,
        718 F.2d 233 (7th Cir. 1983).................................12

United States v. Ranney,
        719 F.2d 1183 (1st Cir. 1983) ...............................12

### TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL CASES:**                                                    **PAGE(S)**

United States v. Ray,
    930 F.2d 1368 (9th Cir. 1990)..............................17, 18

United States v. Rubino,
    431 F.2d 284 (6th Cir. 1970)................................13

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999)................................23

United States v. Shirley,
    884 F.2d 1130 (9th Cir. 1989)...............................13

United States v. Silverman,
    449 F.2d 1341 (2d Cir. 1971)................................12

United States v. Simas,
    937 F.2d 459 (9th Cir. 1991)................................15

United States v. Skillman,
    922 F.2d 1370 (9th Cir. 1990)...............................19

United States v. Smith,
    609 F.2d 1294 (9th Cir. 1979)...............................18

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984)...............................14


**STATUTES AND RULES:**

18 U.S.C. § 5324(a)(3)............................................ 6

31 C.F.R. 1010.415............................................... 7

31 U.S.C. § 5324(d)(2)........................................... 7

Fed. R. Evid. 404(b)............................................ 20

Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C)......................... 22

Fed. R. Evid. 405(a)............................................ 22

Fed. R. Evid. 608(a)............................................ 21

Fed. R. Evid. 609............................................... 21

Fed. R. Evid. 611(a)........................................12, 13

<u>**TABLE OF AUTHORITIES (CONTINUED)**</u>

**FEDERAL CASES:**                                                          **PAGE(S)**

Fed. R. Evid. 702.................................................14

Fed. R. Evid. 703.................................................15

Fed. R. Evid. 803(6)...............................16, 17, 18, 19

Fed. R. Evid. 902(11)..............................................8

Fed. R. Evid. 1003.....................................16, 19

Fed. R. Evid. 1005.................................................19

Fed. R. Evid. 1006.................................................11

## I.    CASE STATUS

1.    Trial is scheduled for October 7, 2014.  The government's case-in-chief should take one or two court days.

2.    Defendant Cindy Omidi is out of custody and is the sole defendant charged.

3.    Trial by jury has not been waived.

4.    The government will call approximately seven witnesses in its case-in-chief, including postal clerks, a Bank Secrecy Act expert, and a summary witness who will testify about most of the exhibits and whose direct examination will be the longest.

5.    Defendant has stipulated to the admission of many of the government's exhibits and to the foundation of some others.

6.    The exhibits to which defendant has stipulated include the Money Orders at issue in the case, certain Post Office reports showing money order purchases, debit card transactions (to show cash was used by excluding debit card usage), and credit card transactions, focused bank and credit card records for the money order purchase dates and a handful of other dates (including for Julian and Michael Omidi), corporate records for Pacific West Dermatology and other entities whose names appear on the Money Orders, defendant's handwriting and signature exemplars, Department of Motor Vehicle records showing defendant's and her sons' names, photos, and signatures (with a stipulation as to each of their former names), and blank Currency Transaction Report ("CTR") and Postal Service Form 8105-A (the equivalent of a CTR).  The government will move these exhibits into evidence at the beginning of trial.

7.   Defendant has also stipulated or likely will stipulate as to the authenticity of most of the remaining documents, other than those the government intends to introduce through a witness, including credit card receipts for the Beverly Hills post office (which the government contends show defendant's signature on credit card receipts at the same time as the Money Order purchases), receipts and emails from a furniture store from which defendant purchased a couch using Money Orders, a 1997 Currency Transaction Report identifying defendant as the customer, a photo-lineup in which Postal clerk Roberta Chandler identified defendant's photo, and a blank CTR.  Document custodians who were previously served with a trial subpoena have been released based on these stipulations.

8.   In addition, the government will seek to admit a handful of exhibits to which defendant has not stipulated to the admission but has stipulated to the foundation:

a.   A notice posted at the Wilshire Business Center/UCLA contract post office location in at least two prominent locations, advising customers of the $3,000 reporting requirement;

b.   Photographs of the various post office locations at issue; and

c.   A summary chart showing the Money Order purchases, evidence that cash was used, evidence of contemporaneous credit card use, and the disposition thereof, to the extent defendant does not stipulate to its admission.  The parties have agreed to hand out enlarged copies (on 17 x 22 inch paper) of this summary chart to the jury, as it can be difficult to read on a television screen.

9.    Further, the government will seek to admit the following exhibits and establish a foundation through a live witness:

a.    Notices posted at the UCLA/Wilshire Business Center location, a photograph of the notice, and documents establishing the date on which the notices were posted; and

b.    A compendium of admitted exhibits bearing what the government contends are defendant's signatures, such as Money Order endorsements and credit card receipts, to permit the jury to compare those signatures against known samples.

10.    The government has provided defendants with draft case-in-chief exhibits as of October 1, 2014.  The government provided drafts of its summary exhibits as well.

11.    The government will seek to admit a number of summary exhibits as evidence under Federal Rule of Evidence 1006.  Drafts of those exhibits were first sent to the defense on August 7, 2014 and final or near drafts were sent on October 1, 2014.  The government will also seek to introduce a summary exhibit spreadsheet which summarizes the voluminous documents in this case under Federal Rule of Evidence 1006.  This document was first provided to the defense on August 22, 2014 and a final or near final draft was provided on October 1, 2014.  To date, no objection to any of the summary exhibits has been made.

12.    The government will use a number of demonstrative exhibits at trial that will not be offered into evidence.  These include a map, to which defendant does not object, and to a blow up of a sign which will be offered into evidence in its original form.

13.   To date, defendant has provided Pacific West Dermatology bank records and Cindy Omidi's medical records pertaining to her cancer treatment as its only reciprocal discovery.

## II.   PRETRIAL MOTIONS

Defendant's first pretrial motion requested that the Court unseal the search warrant affidavit for the GET THIN searches, order the disclosure of grand jury testimony to demonstrate the grand jury had probable cause to indict, and order that the government turn over evidence from its active GET THIN investigation.  The Court denied the first two requests but granted the third as to a limited set of documents, including those showing that Julian Omidi may have had a motive to engage in structuring during the 2008 through 2010 period at issue.  Because of the time necessary to cull out such evidence, the government turned over nearly all of its investigation files, subject to a protective order that limited disclosure to defendant and her lawyers.  This order was subsequently modified to permit defendant to disclose certain information to counsel for Julian and Michael Omidi and for Surgery Center Management, solely to obtain assistance in interviewing possible witnesses in this structuring case.

The government then filed a motion *in limine*, seeking to prohibit the introduction of: evidence that defendant is a cancer survivor, has any medical condition, and cares for her elderly father; opinion evidence from government agents regarding whom the agents believed, based on their incomplete investigation, structured the cash; and references to any Suspicious Activity Reports ("SARs"). Defendant responded, conceding it would not attempt to introduce SAR

evidence unless the government opened the door, it would not attempt to introduce sympathy evidence regarding defendant's medical condition but may attempt to introduce evidence of her treatment or condition to explain why she may not have concentrated on the Money Order purchases, and asserting that it was entitled to present evidence of US Postal Inspector Julie Morgan regarding her prior seizure investigation.  After a hearing, the Court ordered defendant to produce her medical records – which reflect she was diagnosed with cancer around July 2009, toward the end of the structuring, and had no cognitive or mental side effects from her treatment – and permitted defendant to voir dire Morgan before calling her as a witness, so the Court could determine whether her testimony would be admissible.  As noted before, the government contends Morgan's testimony is inadmissible, as will become apparent through voir dire: (1) defendant continues to misrepresent the nature of Morgan's investigation and why it was terminated; (2) Morgan never opined regarding the person behind the structuring; and (3) any opinions Morgan might have made were based on an incomplete investigation, without the benefit of the Cindy Omidi credit card transaction evidence or even the Postal Money orders that were structured in 2009 and 2010 but were not used until 2011, most of which were facially connected to defendant including 22 being deposited in her personal bank account.  Finally, it remains unclear whether defendant will attempt to raise the "cancer" defense or otherwise refer to her medical condition, but if she attempts to do so then the government will object and renew its motion because the medical records do not

support any such defense and therefore any mention of her condition
would be substantially more prejudicial than probative.

Defendant, her sons, and a related entity Surgery Center
Management then each filed motions related to a GET THIN
investigation-related interview of lawyer and former 1-800 GET THIN
president Robert Silverman, who discussed nothing relevant to the
structuring case.  The Court conducted a daylong hearing regarding
the interview, and on September 29, 2014, the government submitted an
*in camera* filing as ordered by the Court.  As the Court noted
repeatedly at the hearing, it appears there is no connection between
the Silverman inquiry and the structuring case, so the government
believes that the Court need not rule on the motions before
commencing trial.

The government then filed another *in limine* motion on September
25, essentially expanding its earlier motion to prevent any
discussion of SARs to now include preventing any discussion of the
Postal Service's analog to SARs, Forms 8105-B, and any training
thereon.  The government had requested that the Court rule on that
motion on October 6, 2014, at 10:00 a.m.  After defendant responded,
the Court took up the matter on October 2, 2014, and orally granted
in part and denied in part the government's motion; the parties will
request clarification of the Court's order if necessary.

## III. INDICTMENT AND ELEMENTS

This prosecution is based on a single-count indictment that
charges defendant with structuring, in violation of 31 U.S.C.
§ 5324(a)(3), between July 2008 and December 2009.  However, pursuant
to prior discussions with the defense, the government will present

evidence as to structuring occurring through February 2010 without objection: a total of 109 transactions on 92 days accounting for the 303 structured Money Orders.  The government also is seeking an *Apprendi* enhancement that defendant structured more than $100,000 in a 12-month period, which increases the statutory maximum sentence from five years to ten years, pursuant to 31 U.S.C. § 5324(d)(2).

As noted in 18 U.S.C. § 5324(a)(3) and 31 C.F.R. 1010.415, and with the five-year statute of limitations in mind, for defendant to be convicted of structuring, the government must prove the following elements beyond a reasonable doubt:

First, the defendant knowingly structured, attempted to structure, or assisted in structuring a currency transaction, with all of you agreeing that defendant structured on or after October 12, 2008;

Second, the defendant knew of the financial institution's legal obligation to report currency purchases of money orders of $3,000 or more;

Third, the purpose of the structured transaction was to evade that reporting obligation.

A person structures a transaction if that person, acting alone or with others, conducts one or more currency transactions in any amount, at one or more financial institutions, on one or more days, for the purpose of evading the reporting requirements described earlier.  Structuring includes breaking down a single sum of currency exceeding $3,000 into smaller sums, or conducting a series of currency transactions, including transactions at or below $3,000. Illegal structuring can exist even if no transaction exceeded $3,000

7

at any single financial institution on any single day.

It is not necessary for the government to prove that a defendant knew that structuring a transaction to avoid triggering the filing requirements was itself illegal.  The government must prove beyond a reasonable doubt only that a defendant structured, assisted in structuring, or attempted to structure, currency transactions with knowledge of the reporting requirements and with the specific intent to avoid said reporting requirements.

**IV.   STATEMENT OF FACTS**

The government has identified 303 Postal Money Orders, all but a handful of which were (a) deposited in bank accounts for which defendant was the sole or joint signatory, (b) signed by defendant or contained her name and handwriting, or (c) otherwise connected to defendant through her businesses or her sons.  Other than on two occasions – one of which obviously was not a "single transaction" because the three money orders were non-sequential – most of the money orders were purchased in a $2,900 batch at a single post office (279 of the 303 Money Orders were purchased as part of a $2,900 batch), or in a different amount at a different Post Office on the same day as a $2,900 purchase was made elsewhere.  There were also many $2,900 purchases on consecutive days, including four and even five days in a row (twice), generally visiting a different Post Office from the day before.  In addition to spreading out the Money Orders across four Post Offices, they were also spread out across Post Office clerks, with the 109 transactions being completed by 25 different clerks, for an average of only four transactions per clerk, over the 19 months of structuring.

In addition to nearly all of the Money Orders being deposited or otherwise disposed of in a way connected to defendant, defendant's credit card usage demonstrates she bought the Money Orders: for 62 of the 109 transactions, defendant used her AMEX credit card or signed a receipt for her son's credit card at the same Post Offices, on the same day, and (where time and clerk identity are known) with the same clerk and usually within a few minutes of the Money Order purchases.

The combination of the Money Order uses – including 22 of the 303 being deposited in defendant's personal bank account – and defendant's credit card being used at the same time as the Money Order purchases, points to a single person – defendant – having bought the Money Orders.

Regarding her awareness of the $3,000 reporting requirement, the Wilshire Business Center/UCLA contract Post Office, at which the most structured Money Orders were bought, prominently posted at least two signs that specifically identified the $3,000 requirement.  In addition, the pattern of 93 separate $2,900 purchases is consistent with knowledge of the $3,000 reporting requirement.

Finally, the pattern of purchases evidences intent.  Going to two or three Post Offices in the same day, usually just minutes apart, to conduct a transaction that could have been completed at one Post Office – albeit with the transaction being reported – has no benign explanation.  The same is true for the pattern of visiting Post Offices on consecutive days, including five days in a row (twice), generally hopscotching between the four Post Offices.

## V.   ANTICIPATED DEFENSE CASE

Defendant has not articulated her defense, beyond suggesting that she might allege the government's investigation was sloppy and that someone else, possibly Julian Omidi, purchased the Money Orders instead of defendant.   Defendant has not shown the government any exhibits or mentioned any proposed witnesses other than Inspector Morgan.

## VI.   EVIDENTIARY ISSUES

### A. Stipulations

The parties have agreed in principle to testimonial and evidence stipulations, subject to finalizing the documents.   The testimonial stipulations include that non-testifying post office employees who sold the Money Orders generally would testify that they did not recognize defendant – or her sons for that matter – as postal customers.   The parties also will stipulate to the absence of structuring-warning signs at the remaining three post offices, unlike the multiple signs at the Wilshire Business Center.

The evidence stipulation provides a brief description of each exhibit to which the parties have either stipulated as to the admission or foundation.   The government also expects defendant will stipulate as to former names of defendant and her sons, so as to avoid the use of the term "aka" or "alias" in regard to their names.

### B.   Charts and Summaries

This case involves a large number of documents, particularly more than 2,000 pages of credit card records and hundreds of additional pages of bank records. To assist in the jury's understanding of the case, the government intends to present charts

and summaries of voluminous and admissible documents, namely Money Order purchases, credit card records, bank records, and Money Order uses such as bank records.

Fed. R. Evid. 1006 provides:
The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place. The court may order that they be produced in court.

In this case, all the underlying records have either been copied and produced for the defendants or made available to them for their examination and copying.

        i.   Summary Charts

The government has provided draft a summary chart to defendant encompassing most of the relevant financial records, and draft summary exhibits based on the summary chart that highlight certain patterns or examples therein, which the government believes it should be permitted to use in opening (just the summary exhibits) and should be admitted as exhibits (both the summary chart and summary exhibits).

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible and available for inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979).  While the underlying documents must be admissible, they need not be admitted.  See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6.  Summary charts need not contain the defendant's version of the evidence and

may be given to the jury while a government witness testifies about them.  See United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964).

Summary charts and exhibits, such as those the government wishes to introduce into evidence, have long been recognized as an appropriate means of clarifying a complicated or document-intensive case for the jury.  See United States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971).  Fed. R. Evid. 611(a) permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."  See United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

Hence, under Federal Rules of Evidence 1006 and 611(a), courts routinely admit into evidence summary charts that organize other evidence and aid the jury's understanding as long as their underlying evidence is admissible and made available to the adverse party, and a witness with knowledge of their preparation is available for cross-examination.  See Gardner, 611 F.2d at 776; Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993); United States v. Caswell, 825 F.2d 1228, 1235-36 (8th Cir. 1989).

The summary charts and exhibits the government intends to present satisfy all of the foregoing requirements.  The underlying evidence, such as Money Orders, bank records, and credit card records, are admissible.  All of the evidence has already been

12

provided or made available to the defense.  The witness who prepared the summary exhibits will be available for cross-examination. Moreover, the summary exhibits will serve to organize and clarify the government's presentation and assist the jury's understanding of the case.  The use and admission of summary exhibits at trial is well within the Court's discretion.  Fed. R. Evid. 611(a); Gardner, 611 F.2d at 776.

Summary charts and exhibits may be used by the government in the opening statement.  Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove." United States v. De Peri, 778 F.2d 963, 979 (3d Cir. 1985) (approving government's use of a chart); United States v. Rubino, 431 F.2d 284, 290 (6th Cir. 1970)(same).

ii.   Summary Witness

The government intends to use a summary witness, who will sit through the presentation of evidence, to orient the jury to evidence from disparate sources such as exhibits and, to the extent necessary, prior trial witnesses, generally by using the summary chart.  A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted.  The Court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed." United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (DEA agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence;

13

summary charts properly admitted); <u>United States v. Lemire</u>, 720 F.2d 1327, 1348 (D.C. Cir. 1983).

A summary witness may rely on the analysis of others where the summary witness has sufficient experience to judge another person's work and incorporate as his own the fact of its expertise.  The use of other persons in the preparation of summary evidence goes to its weight, not its admissibility.  <u>See</u> <u>United States v. Soulard</u>, 730 F.2d 1292, 1299 (9th Cir. 1984); <u>Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.</u>, 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . . . that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand.").  A summary witness's testimony requires that he draw conclusions from the evidence presented.  When a summary witness simply testifies as to what the government's evidence shows, he does not testify as an expert witness.  <u>United States v. Pree</u>, 408 F.3d 855, 869 (7th Cir. 2005).

## C.  Expert Testimony

The government may present evidence from the United States Postal Service's expert in the Bank Secrecy Act, including structuring.  If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide testimony in the form of an opinion or otherwise.  Fed. R. Evid. 702.  The Court has broad discretion to determine whether to admit expert testimony.  <u>See, e.g.</u>, <u>United States v. Cuevas</u>, 847 F.2d 1417, 1428 (9th Cir. 1988); <u>United States v. Patterson</u>, 819 F.2d 1495, 1507 (9th Cir. 1987); <u>United States v. Binder</u>, 769 F.2d 595, 601 (9th Cir. 1985).  An

14

expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703.

Law enforcement officers may provide expert opinion testimony that the defendant's activities match "the usual criminal modus operandi." United States v. Simas, 937 F.2d 459, 465 (9th Cir. 1991) (quoting United States v. Espinosa, 827 F.2d 604, 611-13 (9th Cir. 1987)). Such evidence alerts the jury to the possibility that a combination of seemingly innocuous events may indicate criminal behavior. See, e.g., United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

Drawing upon his specialized knowledge, an experienced government agent may testify as an "expert summary witness" about the evidence adduced at trial. See, e.g., United States v. Marchini, 797 F.2d 759, 765 (9th Cir. 1986); Cuevas, 847 F.2d at 1428. An experienced agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue. United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3 (9th Cir. 1989) (citing United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976)).

### D.  Authentication and Foundation

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under Rule 901(a), evidence should be admitted, despite any challenge, once the government makes a prima facie showing of

authenticity or identification so "that a reasonable juror could find in favor of authenticity or identification . . . [because] the probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original. See Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

**E.    Business Records**

i.    Foundational Requirements

For business records to be admissible, the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity. Fed. R. Evid. 803(6); United States v. Bland, 961 F.2d 123, 126-28 (9th Cir. 1992). In determining whether these foundational facts are established, the Court may consider hearsay and other evidence not admissible at trial. See Federal Rules of Evidence 104(a) and 1101(d)(1); United States v. Bourjaily, 483 U.S. 171, 178-79 (1987).

Challenges to the accuracy or completeness of business records ordinarily go to the weight of the evidence and not its

admissibility.  See, e.g., La Porta v. United States, 300 F.2d 878, 880 (9th Cir. 1962).

        ii.  "Qualified Witness"

The phrase "other qualified witness" is broadly interpreted to require only that the witness understand the recordkeeping system. United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993); United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir. 1993); United States v. Ray, 930 F.2d 1368, 1370-71 (9th Cir. 1990) (welfare fraud investigator may testify about contents of defendant's welfare file where investigator was familiar with filing and reporting requirements and forms used, even though she did not record information and was not custodian); United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("The witness 'need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.'").

A qualified witness need not be employed by, or related to, the entity to whom the records belong; a federal agent or an independent witness may be a qualified witness for records seized from a company. See Franco, 874 F.2d at 1139-40 (narcotics agent qualified to testify about record-keeping practices of a money-exchange for purposes of Rule 803(6)); United States v. Hathaway, 798 F.2d 902, 905-07 (6th Cir. 1986) (FBI agent could provide foundation testimony for admission of company records under Rule 803(6); holding: "There is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to

be admitted. . . . [A]ll that is required is that the witness be familiar with the record keeping system.").

### iii.  Circumstances of Preparation

The government need not establish precisely when or by whom the document was prepared; all the rule requires is that the document be made "at or near the time" of the act or event it purports to record. See United States v. Huber, 772 F.2d 585, 591 (9th Cir. 1985); United States v. Basey, 613 F.2d 198, 201 n.1 (9th Cir. 1979).  "There is no requirement that the government establish when and by whom the documents were prepared."  See Ray, 930 F.2d at 1370; Huber, 772 F.2d at 591 ("[T]here is no requirement that the government show precisely when the [record] was compiled").

Rule 803(6) does not require that the business rely on the document in a specific way; the rule merely requires that the record be "kept in the course of regularly conducted business activity." See United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (citing United States v. Miller, 771 F.2d 1219, 1237 (9th Cir. 1985); United States v. Smith, 609 F.2d 1294, 1301 (9th Cir. 1979)).

### iv.  Authentication by Declaration

Certified domestic records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity.  Fed. R. Evid. 902(11).

Custodian of records declarations may be utilized by the Court to provide a foundation for the admission in evidence of business

18

records without creating any confrontation issue under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  <u>See</u> <u>United States v. Hagege</u>, 437 F.3d 943, 957 (9th Cir. 2006); <u>United States v. Cervantes-Flores</u>, 421 F.3d 825, 832-32 (9th Cir. 2005).

   v.   <u>Duplicates</u>

A duplicate is admissible to the same extent as an original unless (1) there is a genuine question as to the authenticity of the original, or, (2) in the circumstances, use of the duplicate would be unfair.  Fed. R. Evid. 1003.  Even a photocopy bearing extraneous handwriting not connected to the defendant is admissible.  <u>United States v. Skillman</u>, 922 F.2d 1370, 1375 (9th Cir. 1990).

**F.   Public Records**

Public records and reports are admissible under an exception to the hearsay rule.  Fed. R. Evid. 803(8).  The contents of an official public record that is certified as correct may be proved by a copy, and may be proved by a copy without extrinsic evidence of authentication as long as the copy bears a seal of the United States, any state, or department thereof.  Fed. R. Evid. 1005; 902(1).

**G.   Cross-Examination of Defendant**

A defendant who testifies at trial waives her right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  The scope of defendant's waiver is coextensive with the scope of relevant cross-examination.  <u>United States v. Cuozzo</u>, 962 F.2d 945, 948 (9th Cir. 1992); <u>Black</u>, 767 F.2d at 1341 ("[w]hat the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the

inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony"). Additionally, Fed. R. Evid. 404(b) does not proscribe the use of other act evidence as an impeachment tool during cross-examination. United States v. Gay, 967 F.2d 322 (9th Cir. 1992).

Regarding defendant, the government has provided notice at various times that its cross-examination materials include but are not limited to: (1) defendant's tax records for 2005 through 2008, which indicate defendant failed to timely file tax returns for 2005 through 2007, and filed her 2008 return at the end of 2009, see United States v. Mitchell, 613 F.3d 862, 866 (8th Cir. 2010) (tax returns admissible to prove motive for structuring); (2) her medical records, to the extent she claims to have been affected in any material way by her July 2009 diagnosis and her post-July 2009 surgery and treatment; (3) eHarmony.com dating website admissions by defendant in 2008, such as that she cannot live without "cash flow"; and (4) various evidence concerning defendant's motive to structure being identical to Julian Omidi's motive, to the extent defendant has raised Julian Omidi's possible motive at trial.

H.   **Cross-Examination of General Witnesses**

Defendant has not identified her potential witnesses to the government, so the government cannot presently assess the credibility of any of the potential witnesses.  Under Federal Rules of Evidence 609, the credibility of a witness may be supported or attacked by evidence in the form of: (1) conviction for crimes involving dishonesty or false statements, provided that the conviction was sustained or the defendant was released from prison on the conviction

within the past ten years; (2) prior felony convictions, provided
that the conviction was sustained or the defendant was released from
prison on the conviction within the past ten years; and (3) opinion
or reputation testimony provided that the testimony refers only to
the witness's character for truthfulness or untruthfulness.  Fed. R.
Evid. 609.  Moreover, reputation or opinion evidence relating to
truthfulness may be admitted only if the witness' character for
truthfulness has been attacked.  Fed. R. Evid. 608(a).  Similarly,
specific instances of conduct of a witness may, in the court's
discretion, be inquired into on cross-examination of the witness only
if the conduct concerns his character for truthfulness or
untruthfulness.  Such conduct, however, may not be proved by
extrinsic evidence.  Fed. R. Evid. 608(b).

## I.   Character Evidence

The Supreme Court has recognized that character evidence —
particularly cumulative character evidence — has weak probative value
and great potential to confuse the issues and prejudice the jury.
See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The
Court has thus given trial courts wide discretion to limit the
presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper.
Federal Rule of Evidence 405(a) sets forth the sole methods for which
character evidence may be introduced.  It specifically states that
where evidence of a character trait is admissible, proof may be made
in two ways: (1) by testimony as to reputation and (2) by testimony
as to opinion.  Thus, a defendant may not introduce specific
instances of her good conduct through the testimony of others.  See

Michelson, 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental or moral traits.").

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. See Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. See Michelson, 335 U.S. at 481. The only prerequisite is that there must be a good-faith basis that the incidents inquired about are relevant to the character trait at issue. See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

**VII. RECIPROCAL DISCOVERY**

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of the defendant to produce three categories of materials that she intends to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on the defendant a continuing duty to disclose these categories of materials. Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c). Defendants' disclosure obligations are not limited to evidence a defendant may intend to use or elicit during a defense case-in-chief, but include any affirmative evidence the defense intends to admit during the government's case-in-chief.

In those circumstances where a party fails to produce discovery as required by Rule 16, the Rule empowers the district court to

22

"prohibit the party from introducing evidence not disclosed," or "enter such other order as it deems just under the circumstances."

The Ninth Circuit has held that where a defendant fails to produce reciprocal discovery or fails to provide timely notice of his intention to call an expert witness, it is well within the district court's discretion to exclude such defense evidence, especially where the defense disclosure was made after the start of trial.  See United States v. Aceves-Rosales, 832 F.2d 1155, 1156-57 (9th Cir. 1987); United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999); United States v. Nash, 115 F.3d 1431, 1439-40 (9th Cir. 1997).  The Ninth Circuit has specifically held that exclusion of the evidence is a proper sanction for withholding evidence from the government as a "strategic decision".  United States v. Scholl, 166 F.3d 964 (9th Cir. 1999) (holding that the court did not abuse its discretion in excluding evidence that the defense withheld as a 'strategic decision' until the government was unable to fully investigate).

As of the filing of this brief, the government has received exclusively Pacific West Dermatology bank account reciprocal discovery from defendant.

**VIII.    CROSS EXAMINATION OF LAY OPINION WITNESSES (POSTAL CLERKS)**

At the October 2, 2014, status conference, the Court suggested it would partially grant the government's motion in limine to prohibit evidence and argument that, because clerks did not file a Form 8105-B, defendant was less likely to have known about the reporting requirements.  The Court was not included to permit a certain line of cross-examination proposed by the government, but

23

permitted the government to renew its request for such questioning and to brief the issue in its trial memorandum.

If defendant elicits opinion evidence regarding whether a Postal clerk knew identified any structuring, it is both appropriate and fair that the government be permitted to ask a "what if you knew" or "did you know" hypothetical on cross-examination to give the jury an accurate picture.

Defendant's claim that such cross-examination is irrelevant, fails.  If, as defendant claims, the Postal clerks' opinions regarding structuring that are based solely on what they knew at the time are probative of guilt or innocence, then their opinions based on other information available at the time but not known to them would be equally probative of guilt or innocence.  Defendant wants the jury to avoid hearing how the witness's opinion would have changed based on the full facts (such as the total number of related purchases made the same day or within a short time period).  In effect, defendant is insisting that an opinion based on incomplete facts is the only permissible one to present to the jury.  This is neither consistent with the jury's truth-finding function nor with the Rules of Evidence.

Defendant in her opposition to the government's motion in limine cited no authority suggesting that such questioning  would be improper and ignores the fact that it is commonplace – for example, in cross examination of lay opinion testimony on character, in which a witness who opines on defendant's truthfulness is often asked if his opinion would change based on additional, admitted or provable facts.  Particularly instructive on the issue here are United States

v. Laurienti, 611 F.3d 530, 549 (9th Cir. 2010) and United States v. Cuti, 720 F.3d 453 (2d Cir. 2013). In Laurienti, the Ninth Circuit approved the government's use of hypotheticals on its own witnesses. On appeal from a conviction in a fraud trial, the Ninth Circuit determined that "if you had known" hypotheticals directed to victims were appropriate questions, even if they were arguably guilt-assuming (which the government's questions here would not be). Laurienti, 611 F.3d at 550. Laurienti involved the prosecutor, over objection by defendant, asking investors whether they would have purchased a stock had they know additional facts [presumably consistent with trial evidence]. Id. at 550.

In Cuti, the defendants, corporate officers, inflated a company's earnings figures and fraudulently sold worthless real estate concessions. Id. at 456. The government called the company's outside auditor and inside accountant and, over defendant's objection, asked how their financial reporting would have been different if they had known the full facts. Id. at 457.

On appeal, defendant asserted that the government improperly elicited expert opinion from non-experts, and their hypothetical-responsive testimony as lay witnesses was inadmissible. Id. In finding the district court did not abuse its discretion, the Second Circuit noted that lay witnesses are permitted to offer opinion testimony, that these witnesses' inferences were cabined by the factual foundation laid in admitted testimony and exhibits, fact-based hypotheticals, and their reasoning. Id. The Second Circuit also noted the unique nature of the fact witnesses testifying against Cuti, who were experienced accountants, and that the hypothetical

questions used admitted facts and were based on undisputed accounting rules.

The court rejected defendants' assertion that, because the hypothetical facts were not known to the witnesses, they lacked personal knowledge sufficient to testify.  Instead, it noted "personal knowledge of a fact 'is not an absolute' to Rule 602's foundational requirement, which 'may consist of what the witness thinks he knows from personal perception."  Id. at 458-59 (citing Rule 602's advisory committee note).

Finally, it concluded "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." Id. at 459.  Cuti, id., cites Laurienti and cases from four additional circuits that reach the same conclusion for fraud cases alone: United States v. Orr, 692 F.3d 1079, 1096–97 (10th Cir. 2012); United States v. Jennings, 487 F.3d 564, 582 (8th Cir. 2007); United States v. Ranney, 719 F.2d 1183, 1187–88 (1st Cir. 1983); United States v. Bush, 522 F.2d 641, 649–50 (7th Cir. 1975).

Under Laurienti and Cuti, the government could even call the trained Postal clerks and ask, on direct examination, "the fact of what [each clerk] did not know and how, if each clerk had known the independently establish fact[s], it would have affected [the clerk's] conduct or behavior."  Cuti, 720 F.3d at 459.  At a minimum, it should be allowed to ask such questions as a component of truth-finding cross-examination.